UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Ian Lane,<br><br>                      Plaintiff,<br><br>v.<br><br>Century International Arms, a Florida corporation, Hunters Outlet, a Minnesota corporation, Remington Arms Company, a North Carolina corporation, SGM Tactical, LLC, a Tennessee corporation, John Doe, Richard Roe, and the XYZ entity,<br><br>                      Defendants. | Case No.:<br><br>**NOTICE OF REMOVAL**<br><br>**JURY TRIAL DEMANDED** |

TO: THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICTOF MINNESOTA; AND PLAINTIFF ABOVE-NAMED.

**PLEASE TAKE NOTICE** that Defendant Century International Arms, Inc. i/s/h/a Century International Arms ("Century"), by and through the undersigned counsel, hereby submits this Notice of Removal of the above-entitled action from the Minnesota District Court, Ninth Judicial District, Pennington County, to the United States District Court for the District of Minnesota, pursuant to 28 U.S.C. §§ 1332, 1441 and 1446. In support of its Notice of Removal, Century states as follows:

**I.     INTRODUCTION**

Defendant Century desires to exercise its right under the provisions of 28 U.S.C. §§ 1441, *et seq.*, to remove this case from Minnesota District Court, Ninth Judicial District, Pennington County where this case was pending under the case style of *Ian Lane*

1

*v. Century International Arms, Hunters Outlet, Remington Arms Company, and SGM Tactical, LLC.* Specifically, 28 U.S.C. § 1441 provides:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).

1. Plaintiff in his Complaint seeks damages for personal injuries, including but not limited to the claimed total loss of one eye, when a round of ammunition allegedly "exploded" in the chamber of the Draco NAK9 pistol manufactured by Defendant Century. (*See* Ex A, Plt. Complaint, General Allegations, at ¶¶ IX-X.) Although not specifically addressed in the Complaint, under information and belief, Defendant "Remington Arms Company" ("Remington") manufactured the ammunition at issue in the case and Defendant SGM Tactical, LLC ("SGM Tactical") manufactured the after-market magazine in the pistol at the time of the incident. Defendant "Hunters Outlet" ("Hunters Outlet") was the retail seller of the Draco NAK9 pistol and is fraudulently joined, as it is an innocent seller under Minn. Stat. Ann. § 544.4, and there are no viable claims for independent liability against it.

2. The summons was issued on or about November 18, 2021, and the registered agent for Century was served with a copy of Plaintiff's Summons and Complaint on December 21, 2021. (*See* Ex. B, Summons.) Pursuant to Minnesota Court

Rules 3.01 and 5.04, Plaintiff has served but not filed the Complaint. This civil action has not been tried.

3. Defendant Century voluntarily appears in this action, but reserves all objections, arguments, and defenses to Plaintiff's Complaint. A responsive pleading or motion will be filed in accordance with Rule 81 of the Federal Rules of Civil Procedure.

4. Copies of all process, pleadings, and orders served upon Defendant Century are collectively attached to this Notice of Removal. (*See* Exs. A and B.)

## II. NOTICE OF REMOVAL IS TIMELY.

5. The time in which Defendant Century is required to move, answer, or otherwise plead in response to Plaintiff's Complaint has not elapsed, pursuant to an extension granted by Plaintiff's counsel.

6. Pursuant to the requirements of 28 U.S.C. § 1446(b), this Notice of Removal is timely filed pursuant to Rule 11 of the Federal Rules of Civil Procedure within thirty (30) days after the receipt, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which Plaintiff's action is based.

## III. DIVERSITY JURISDICTION EXISTS.

7. Removal is authorized by 28 U.S.C. §1441 and is based on the United States District Court's original jurisdiction of the case pursuant to 28 U.S.C. § 1332 because (a) the amount in controversy exceeds $75,000; (b) Defendant Hunters Outlet has been fraudulently joined and cannot be considered in the diversity jurisdiction determination; and (c) there is diversity of citizenship between Plaintiff and Defendants Century, Remington and SGM Tactical.

**A.     The Amount in Controversy Exceeds $75,000.**

8.      Plaintiff's Complaint states that the amount in controversy exceeds $50,000, and based on a preponderance of the evidence, the $75,000 amount-in-controversy requirement found in 28 U.S.C. § 1332 is satisfied in this instance.[1]

9.      A defendant must prove that a plaintiff's verdict may reasonably exceed $75,000 by a preponderance of the evidence. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014). The amount in controversy is determined by the amount properly pleaded when the suit is filed. *Zunamon v. Brown*, 418 F.2d 883, 887 (8th Cir. 1969). The determining factor is whether a fact finder might legally conclude that the alleged damages exceed $75,000. *Kopp v. Kopp*, 280 F.3d 883, 885 (8th Cir. 2002). "This standard applies regardless of whether 'the complaint alleges no specific amount of damages or an amount under the jurisdictional minimum.'" *In re Impac CMB Tr. Series 2004-11,* CIV. 13-1916 JNE/JSM, 2013 WL 5676551, at *1 (D. Minn. Oct. 18, 2013) (quoting *In re Minn. Mut. Life Ins. Co. Sales Practices Litig.*, 346 F.3d 830, 834 (8th Cir.2003)). To make this amount in controversy determination, the court must consider the substance of the plaintiff's claims. *See City of U. City, Missouri v. AT & T Wireless Services, Inc.,* 229 F. Supp. 2d 927, 933 (E.D. Mo. 2002) (citing *Bishop Clarkson Memorial Hospital v. Reserve Life Ins. Co.*, 350 F.2d 1006, 1008 (8th Cir.1965)).

---

[1] Minnesota law provides that "in a pleading in a civil action which sets forth an unliquidated claim for relief, whether an original claim, cross-claim, or third-party claim, […] [i]f a recovery of money in an amount greater than $50,000 is demanded, the pleading shall state merely that recovery of reasonable damages in an amount greater than $50,000 is sought." Minn. Stat. Ann. § 544.36.

10. Serious disabling injuries sustained by the plaintiff is evidence that the amount in controversy has been met. *See Quinn v. Kimble,* 228 F. Supp. 2d 1038, 1041 (E.D. Mo. 2002) (holding that a fact finder might conclude that the damages of each plaintiff exceeds the jurisdictional amount when the complaint alleges numerous serious and disabling injuries); *see also Chase v. Shop 'N Save Warehouse Foods, Inc.,* 110 F.3d 424, 430 (7th Cir. 1997) (citing *Jeffries v. Silvercup Bakers, Inc.,* 434 F.2d 310, 311–12 (7th Cir.1970) (finding sufficient probability that the jurisdictional amount was met in part because of the severity of plaintiff's injury)).

11. Additionally, in the Eighth Circuit, "district courts rely on the plaintiff's perspective in determining the amount in controversy," and the plaintiff's settlement demand is relevant to determining this amount. *Groeneweg v. Flint Hills Resources, LP.,* CIV. 08-4815DWFFLN, 2008 WL 4951494, at *2 (D. Minn. Nov. 18, 2008) (citing *Smith v. Am. States Preferred Ins. Co.,* 249 F.3d 812, 813-14 (8th Cir.2001)).

12. In this case, Plaintiff alleges that a round of ammunition "exploded" in a pistol he was shooting "causing severe and permanent injury to Plaintiff[, i]ncluding but not limited to a total loss of one of his eyes." (*See* Ex A, Plt. Complaint, General Allegations, at ¶¶ IX-X). Plaintiff alleges that, as a result of this incident, he suffered "severe and permanent injuries to his person and resultant severe economic loss and hardship." (*Id.* at ¶ XI.) Additionally, Plaintiff's initial settlement demand, served on May 25, 2021, was a seven-figure global demand, several times in excess of the $75,000 amount-in-controversy requirement.

13. Based on the severity of the alleged injury and the totality of the damages sought by Plaintiff as indicated, in part, by his settlement demand, Defendant submits that the amount in controversy requirement is met.

### B. There is Diversity of Citizenship Between Plaintiff and All Properly Joined Defendants – Century, Remington, and SGM Tactical.

14. Because Hunters Outlet is fraudulently joined (as addressed below) and the citizenship of Plaintiff and Defendants Century, Remington, and SGM Tactical are diverse, this Court has diversity jurisdiction over this matter. *See* 27 U.S.C. § 1332.

15. As alleged in the Complaint, Plaintiff is a citizen and resident of Thief River Falls, Minnesota. (*See* Ex A, Plt. Complaint, Jurisdiction and Parties, at ¶ V).

16. At the time of the commencement of this action and at all times thereafter Defendant Century has been a Vermont corporation with its principal place of business in Delray Beach, Florida. For purposes for diversity, Century is a citizen of Vermont and/or Florida. *See* 28 U.S.C. § 1332(c)(1) (explaining that for the purposes of diversity jurisdiction, a corporation is deemed to be a citizen of its state of incorporation and of the state where it has its principal place of business).

17. The Complaint alleges that Defendant SGM Tactical is a Tennessee corporation with its principal place of business in Knoxville, Tennessee. (*Id.* at ¶ IV). However, in reality it is a Tennessee limited liability company, with its principal place of business in Knoxville, Tennessee. (*See* Ex. C, TN Sec. of State Business Entity Details.) None of SGM Tactical's members are residents of Minnesota. (*See* Ex. D, SGM Tactical Email.) *See Am. Seeds, LLC v. Dalchow*, CIV. 12-2951 JNE/LIB, 2012 WL 5931721, at

*1 (D. Minn. Nov. 27, 2012) ("For purposes of diversity jurisdiction, a limited liability company's citizenship is that of its members.").

18. The Complaint alleges Defendant Remington is a North Carolina corporation with its principal place of business in Madison, North Carolina. The Complaint identifies the Remington entity as "Remington Arms Company." No such entity exists, and it appears that Plaintiff is actually referencing either Remington Arms Co., Inc. or Remington Arms Co., LLC.

19. Remington Arms Co., Inc. was a Delaware corporation with a principal place of business in Madison, North Carolina. Remington Arms Co., Inc. is no longer in business and is no longer a legal entity. (*See* Ex. E, NC Sec. of State Business Entity Details, Remington Arms Co., Inc.)

20. Remington Arms Co., LLC is a Delaware limited liability company with a principal place of business in Madison, North Carolina. (*See* Ex. F, NC Sec. of State Business Entity Details, Remington Arms Co., LLC.) Its sole member, FGI Operating Company, LLC, is a Delaware limited liability company with a principal place of business in North Carolina. (*See* Ex. G, *Fischer v. Remington Arms* Notice of Removal, April 10, 2019, at ¶ 9.) The sole member of FGI Operating Company, LLC is FGI Holding Company, LLC, a Delaware limited liability company with a principal place of business in North Carolina. (*Id.*) Remington Outdoor Co. Inc. is the sole member of FGI Holding Company, LLC, and is a Delaware Corporation with its principal place of business in North Carolina. (*Id.*) Remington Arms Company, LLC filed for Chapter 11

bankruptcy in July of 2020 which remains pending. (*See* Ex. H, Remington Arms Co., LLC Bankruptcy Petition.)

21. Thus, while Remington Arms Co, Inc. no longer exists and Remington Arms Co. LLC is in bankruptcy, for purposes of diversity they, and all members, are citizens of Delaware and/or North Carolina.

22. Since Plaintiff is a resident of Minnesota and Defendants, and their members (where applicable) are not residents of Minnesota, complete diversity exists.

    **C.    Defendant Hunters Outlet is Fraudulently Joined.**

23. Although Defendant Hunters Outlet (legally named Hunters Outlet, Inc.) is incorporated in Minnesota with a principal place of business in Thief River Falls, Minnesota (*See* Ex A, Plt. Complaint, Jurisdiction and Parties, at ¶ II), its citizenship must be disregarded for purposes of diversity jurisdiction because it has been fraudulently joined in order to defeat this Court's jurisdiction pursuant to 28 U.S.C. § 1332.

24. It is well-settled that removal will not be defeated by collusive or fraudulent joinder. *Anderson v. Home Ins. Co.*, 724 F.2d 82, 84 (8th Cir. 1983). Joinder of a defendant will be deemed fraudulent when no cause of action exists against that defendant. *Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 810 (8th Cir. 2003) ("Where applicable state precedent precludes the existence of a cause of action against a defendant, joinder is fraudulent."); *see also Iowa Public Serv. Co. v. Medicine Bow Coal Co.*, 556 F.2d 400, 406 (8th Cir. 1977) ("[I]t is well established that if it is clear under governing state law that the complaint does not state a cause of action against the non-

diverse defendant, the joinder is fraudulent and federal jurisdiction of the case should be retained.").

25. In sustaining a claim of fraudulent joinder, the defendant must demonstrate that "there is no reasonable basis to expect that liability would be imposed upon the defendant in state court for the claims asserted in the complaint." *Vaith v. Gen. Motors, LLC,* 18-CV-031 (JRT/HB), 2018 WL 3489600, at *4 (D. Minn. June 28, 2018), report and recommendation adopted, CV 18-31(JRT/HB), 2018 WL 3475488 (D. Minn. July 19, 2018) (citing *Block v. Toyota Motor Corp.,* 665 F.3d 944, 948 (8th Cir. 2011) (when considering fraudulent joinder, "we do not focus on the artfulness of the plaintiff's pleadings")); *see also Wilkinson v. Shackelford,* 478 F.3d 957, 964 (8th Cir. 2007). Joinder is also fraudulent when there is "no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." *See Masepohl v. Am. Tobacco Co.,* 974 F. Supp. 1245, 1250 (D. Minn. 1997) (quoting *Banbury v. Omnitron Int'l, Inc.,* 818 F. Supp. 276, 280 (D. Minn. 1993)). However, "[a] finding of fraudulent joinder does not require a finding of fraudulent intent; rather, fraudulent joinder exists if, whatever the plaintiffs' motive, their claim against an in-state defendant has no chance of success." *Schwenn v. Sears, Roebuck & Co.,* 822 F. Supp. 1453, 1455 (D. Minn. 1993) (citing *Poulos v. Naas Food, Inc.,* 959 F.2d 69, 73 (7th Cir. 1992)).

26. As the following will demonstrate, Plaintiff's joinder of Hunters Outlet does not deprive this Court of jurisdiction because no cause of action can be asserted against Hunters Outlet based on the allegations contained within Plaintiff's Complaint.

The Complaint improperly lumps all Defendants together and alleges no independent acts by Hunters Outlet that could create liability.

      i.    *Factual and Legal Allegations in Plaintiff's Complaint Pertaining to Hunters Outlet*

27. When deciding whether joinder is fraudulent and removal should be permitted, the Court must look to the facts pleaded in the Complaint and determine whether a cause of action lies against the resident defendant based on the law of the forum. *Anderson v. Home Ins. Co.,* 724 F.2d 82, 84 (8th Cir. 1983). Here, there is simply no basis for liability against Hunters Outlet, as its only connection to this case is sale of the firearm and potentially the ammunition and magazine at issue. Plaintiff does not allege independent liability by Hunters Outlet or facts plausibly establishing Hunters Outlet can be held liable under any of the claims asserted. [2]

28. Plaintiff's Complaint identifies Hunters Outlet as a seller of firearms, ammunition, and firearm accessories and Century, Remington, and SGM as manufacturers. (*See* Ex A, Plt. Complaint, Jurisdiction and Parties, at ¶ I-IV). Based on the factual allegations, Plaintiff asserts causes of action against all Defendants for negligence, strict liability, and breach of warranties. (*Id.* at Counts 1-4).

29. As explained below, the allegations in Plaintiff's Complaint against Hunters Outlet do not give rise to any legally cognizable cause of action under Minnesota law, and,

---

[2] A viable claim "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[A] plaintiff's obligation to prove the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).

accordingly, Hunters is fraudulently joined and must be ignored for purposes of assessing whether the parties are diverse.

ii. *Plaintiff's Strict Product Liability Claim Against Hunters Outlet (Count Two) is Barred by Minn. Stat. Ann. § 544.41.*

30. Plaintiff's strict liability cause of action against Defendant Hunters Outlet fails as a matter of law because under Minnesota law, non-manufacturing sellers are not held strictly liable for the sale of allegedly defective products. *Finke v. Hunter's View, Ltd.,* 596 F. Supp. 2d 1254, 1270 (D. Minn. 2009). Minnesota's "innocent seller" statute mandates the dismissal of strict liability claims against nonmanufacturers once the nonmanufacturer certifies the correct identity of the manufacturer and a complaint against the manufacturer has been filed. Minn. Stat. Ann. § 544.41. The purpose of the innocent seller statute is to temper "the harsh effect of strict liability as it applies to passive sellers, while ensuring that a person injured by a defective product can recover from a viable source." *Block v. Toyota Motor Corp.,* 665 F.3d 944, 948 (8th Cir. 2011) (citing *In re Shigellosis Litig.,* 647 N.W.2d 1, 6 (Minn.Ct.App.2002)). The statute provides this protection to a seller as long as the seller does not fall within the following conditions:

> (1) the defendant [seller] has exercised some significant control over the design or manufacture of the product, or has provided instructions or warnings to the manufacturer relative to the alleged defect in the product which caused the injury, death or damage;
> (2) the defendant [seller] had actual knowledge of the defect in the product which caused the injury, death or damage; or
> (3) the defendant [seller] created the defect in the product which caused the injury, death or damage.

Minn. Stat. Ann. § 544.41. If none of the aforementioned exceptions apply, dismissal is mandatory. *Block v. Toyota Motor Corp.,* 665 F.3d 944, 948 (8th Cir. 2011).

31. Here, the Complaint expressly states that Hunters Outlet is a seller of firearms, ammunition, and firearm accessories whereas Century, Remington, and SGM are the manufacturers of such products. (*See* Ex A, Plt. Complaint, Jurisdiction and Parties, at ¶ I-IV).[3] The Second Count of Plaintiff's Complaint alleges that all Defendants are strictly liable because the equipment (firearm, ammunition, and magazine) sold to Plaintiff were in a defective and unreasonably dangerous condition. (*See* Ex A, Plt. Complaint at Count Two, ¶¶ I-V). There are no allegations that Hunters Outlet manufactured any of the subject products, exercised "significant control" over the design and manufacture of the products, provided any instructions or warnings to the manufacturer of the products, had actual knowledge of the alleged defects, or created the alleged defects.

32. As a nonmanufacturing seller of the firearm, ammunition and/or magazine to Plaintiff, Hunters Outlet cannot be held liable under Minnesota's innocent seller statute because the manufacturers of the products at issue have already been identified and named as Defendants in the Complaint. Additionally, there are no allegations, nor could there be, of significant control over the design of the products at issue, the providing of warnings relative to the alleged defects in the products, actual knowledge of the alleged defects in the products, or the creation of the alleged defect(s) in the products by Hunters

---

[3] It should be noted that nowhere in the Complaint does Plaintiff allege that Hunters Outlet actually sold him the firearm, ammunition and/or magazine at issue. Plaintiff simply states that Hunters Outlet is a seller of firearms, ammunition, and firearm accessories. (*See* Ex A, Plt. Complaint).

Outlet. Therefore, there is no reasonable basis for Plaintiff to maintain a strict liability claim against Hunters Outlet under Minnesota's innocent seller statute.

### iii.   Plaintiff's Negligence Claim Against Hunters Outlet (Count One) Fails as a Matter of Law.

33.   Plaintiff's negligence claim asserted against Hunters has no basis as a matter of law. Plaintiff alleges that the collective Defendants were "negligent in their design, manufacturing, sale, warnings, maintenance, upkeep, provision, distribution, inspection, testing, servicing, and all other aspects of gun manufacturing and sale involved in the equipment at issue in this case." (*See* Ex A, Plt. Complaint, Count One, at ¶ I). Additionally, Plaintiff claims the Defendants failed to provide adequate safety devices, protocols, and safeguards on the equipment and failed to guard, instruct, warn, and prevent injury to Plaintiff. (*Id.* at ¶ XI). The only reasonable extrapolation of these allegations to Hunters Outlet is that it was negligent in the sale and/or failure to warn prior to selling the products at issue.[4]

34.   Plaintiff has not asserted any facts to support a possible negligence claim against Hunters Outlet. When negligence claims involve the sale of products, a plaintiff must allege facts from which the court could possibly find that the non-manufacturer owed the plaintiff a duty of reasonable care. *Masepohl v. Am. Tobacco Co., Inc.,* 974 F. Supp. 1245, 1252 (D. Minn. 1997) (finding fraudulent joinder when plaintiff alleged no facts from which the court could find the defendants were independently negligent).

---

[4] Although the Complaint makes the same allegations against all the Defendants, because the Complaint also alleges that Hunters Outlet is a seller in this case, there is no reasonable basis for alleging that Hunters owed any duties in the design, manufacturing, distribution, inspection, testing, upkeep, or servicing of the products at issue. *Masepohl v. Am. Tobacco Co., Inc.,* 974 F. Supp. 1245, 1250 (D. Minn. 1997).

Significantly, Minnesota does not recognize a pre-sale or post-sale duty to warn or not to sell absent knowledge of an alleged defect. *See Block v. Toyota Motor Corp.,* 665 F.3d 944, 950 (8th Cir. 2011) (affirming the denial of remand and dismissal of the fraudulently joined defendant with prejudice when plaintiff "offered no factual basis that the defendant had any knowledge of, or reason to know of, the alleged defect" and stating that "Minnesota law does not impose a general post sale duty to warn."); *Great Northern Insurance Co. v. Honeywell International, Inc.*, 911 N.W.2d 510, 520 (Minn. 2018) (applying a duty to warn only where the "seller knows or reasonably should know that the product poses a substantial risk of harm."); *By and Through Bunker v. Am. Honda Motor Co., Inc.,* 455 N.W.2d 74, 78 (Minn. App. 1990) (holding that the seller had a duty to warn when it knew of stability problems with the three-wheeled, all-terrain carrier (ATC)); *Frey v. Montgomery Ward & Co.,* 258 N.W.2d 782, 788 (Minn. 1977) (holding that when a seller of a product has actual or constructive knowledge of danger to users, the seller has a duty to give warning of such dangers); Restatement (Second) of Torts § 401 (1965).

35. Here, Plaintiff has alleged no facts that Hunters Outlet had any knowledge of, or reason to know of, an alleged defect in the subject products, a prerequisite to imposing duty on a Defendant. The Complaint is devoid of any facts of "grounds" to allow for a reasonable inference that Hunters Outlet may be liable to Plaintiff. *See Iqbal*, *supra*, 556 U.S. at 678; *Twombly*, *supra*, 550 U.S. at 555. Simply, no independent negligence is asserted. Since there is no factual allegations or basis that Hunters Outlet had any knowledge of, or reason to know of, the alleged defect, Hunters Outlet did not

owe Plaintiff a duty, or possibly breach any such duty, and there is no reasonable basis for Plaintiff's negligence claim against Hunters Outlet.

    iv. *Plaintiff's Express Warranty Claim Against Hunters Outlet (Count Three) Fails for Lack of an Express Warranty.*

  36. There is no reasonable basis for Plaintiff's breach of express warranty claim against Hunters Outlet. To establish a warranty claim in Minnesota, the plaintiff must prove the existence of a warranty, a breach, and a causal link between the breach and the alleged harm. *Peterson v. Bendix Home Sys., Inc.,* 318 N.W.2d 50, 52–53 (Minn. 1982). In Minnesota, express warranties are created as follows:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
> (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

Minn. Stat. Ann. § 336.2-313(1)(a)-(c). An express warranty claim is a contract claim. *Riley v. Cordis Corp.,* 625 F. Supp. 2d 769, 788 n.13 (D. Minn. 2009). A colorable express warranty claims requires the plaintiff to factually plead what the defendant did, or could have possibly done, to create an express warranty. *Masepohl v. Am. Tobacco Co., Inc.*, 974 F. Supp. 1245, 1252 (D. Minn. 1997) (finding fraudulent joinder when plaintiff alleged a breach of express warranty based on "broad claims" contained in advertisements and promotions).

37. Here, Plaintiff has not alleged any facts that would lead to the existence of an express warranty provided by Hunters Outlet. All that is alleged in the Complaint is that all Defendants "did expressly warrant the products described above were safe for use by persons such as Plaintiff." No affirmation, promise, description or sample as required above is alleged. In fact, no action or statement by Hunters Outlet is alleged. Additionally, Plaintiff did not claim that he relied upon any type of express warranty in purchasing or using the products at issue. Plaintiff failed to establish any facts that could lead to a finding of liability for Hunters Outlet (or any Defendants) under a breach of express warranty theory.

> v. *Plaintiff's Implied Warranty Claim Against Hunters (Count Four) is Subsumed by Strict Liability and Subject to Dismissal.*

38. Plaintiff's cause of action against Defendant Hunters Outlet for breach of implied warranty fails as a matter of law because in Minnesota, strict liability has preempted implied warranty claims where personal injury is involved. Although the innocent seller statute references strict liability, Minnesota courts have interpreted it to equally apply to claims of breaches of implied warranty. *Nimeth v. Prest Equipment Co.*, C1-93-685, 1993 WL 328767, at *1 (Minn. App. Aug. 31, 1993) ("Strict liability has effectively preempted implied warranty claims where personal injury is involved."); *Continental Ins. Co. v. Loctite Corp.,* 352 N.W.2d 460, 463 (Minn.App.1984), pet. for rev. denied (Minn. Nov. 8, 1984); *see also Goblirsch v. Western Land Roller Co.,* 310 Minn. 471, 476 (1976) (finding an implied warranty jury instruction redundant to express and implied warranty theories).

39. Here, Plaintiff alleges that all Defendants impliedly warranted that the items at issue were fit for ordinary use; conformed to the promises made on the container, label, or advertising; and were merchantable and safe for proper use by people such as Plaintiff. (*See* Ex A, Plt. Complaint, Count Four, at ¶ I-III). As a personal injury matter, Plaintiff's implied warranty claim is preempted by his strict liability claim and both claims are subject to dismissal under Minnesota's Innocent Seller statute, Minn. Stat. Ann. § 544.41.

IV. **CONFORMITY WITH THE RULE OF UNANIMITY.**

40. When several defendants are sued in a state court on a joint cause of action, generally, the suit may not be removed to federal court on diversity grounds unless all the defendants who have been properly served join in the removal. *Wilhoit v. Boehringer Ingelheim Pharm., Inc.,* 07-MDL-1836 (JMR), 2009 WL 702007, at *1 (D. Minn. Mar. 13, 2009) (citing *Bradley v. Md. Cas. Co.,* 382 F.2d 415, 419 (8th Cir.1967)); *see* 28 U.S.C. § 1446(a). However, the law does not require consent from a defendant who has been fraudulently joined. *Id.* (citing *Jernigan v. Ashland Oil,* 989 F.2d 812, 815 (5th Cir.1993)).

41. In this case, even though consent is not required from Hunters Outlet and may not be required from Remington, in an abundance of caution, Century has obtained consent to remove the case to federal court on the basis of diversity jurisdiction from Remington, SGM Tactical and Hunter's Outlet. (*See* Ex. I, Consents.)

V. **REMOVAL TO THIS DISTRICT IS PROPER.**

42. Pursuant to 28 U.S.C. §§ 1441, *et seq.*, the right exists to remove this case from Minnesota District Court, Ninth Judicial District, Pennington County to the United

States District Court for the District of Minnesota, which embraces the place where the action is pending.

**V.     CONCLUSION.**

43.     Pursuant to 28 U.S.C. § 1446, a copy of this Notice of Removal is being served on Plaintiff and filed in Minnesota District Court, Ninth Judicial District, Pennington County (*See* Ex. J, Notice of Filing Notice of Removal).

44.     Defendant Century reserves the right to amend or supplement this Notice of Removal and reserves all defenses.

45.     Defendant Century requests a trial by jury.

**WHEREFORE**, Defendant Century International Arms, Inc. prays that this case be removed from the Minnesota District Court, Ninth Judicial District, Pennington County, where it was pending, to this Court, for the exercise of jurisdiction over this action as though this case had been originally instituted in this Court.

Dated:  January 20, 2022

        Respectfully submitted,

        SOULE & STULL LLC

By:  */s/ Kevin P. Curry*
       Kevin P. Curry
       Minn. No. 0285067
       Eight West 43rd Street
       Suite 200
       Minneapolis, MN 55409
       (612) 353-6403
       kcurry@soulestull.com

       **ATTORNEYS FOR DEFENDANT CENTURY INTERNATIONAL ARMS, INC.**

## **CERTIFICATE OF SERVICE**

A copy of the foregoing was filed electronically on January 20, 2022. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt and listed below. Any other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system.

Respectfully submitted,

SOULE & STULL LLC

By: */s/ Kevin P. Curry*
Kevin P. Curry